IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Warren Keith Mills,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>　　　　　　　Defendant.<br>_____ | Civil Action No. 2:10-1657-CMC-BHH<br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Warren Keith Mills, brought this action pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. § 1383(c)(3)),[2] to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") regarding his claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, as amended (the "Act").

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was born on June 7, 1969. (R. at 97.) He alleges that he became disabled on October 30, 2003, due to right eye blindness and poor vision in his left eye, and back pain, shortness of breath, anxiety and depression. (R. at 22-26.) The plaintiff has worked as maintenance mechanic in a shipyard, a landscaper, a painter and a mechanic for a heating and air conditioning company. (R. at 116.)

The plaintiff filed an application for SSI on November 29, 2006. (R. at 97-100.) His application was denied initially and on reconsideration. (R. at 38-39.) After a hearing,

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] 42 U.S.C. Section 1383(c)(3) "incorporates the review provisions of 42 U.S.C. § 405(g)." *Melkonyan v. Sullivan*, 501 U.S. 89, 92 (1991).

before the Administrative Law Judge ("ALJ"), on December 4, 2008, (R. at 18-37), the ALJ issued an unfavorable decision on February 2, 2009 (R. at 10-17).  The Appeals Council denied the plaintiff's request for review, (R. at 1-3), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant has not engaged in substantial gainful activity since October 30, 2006, the application date (20 CFR 416.971 *et seq.*).
>
> (2)    The claimant has the following severe impairments: right eye vision loss; obesity; and back pain (20 CFR 416.921 *et seq*).
>
> (3)    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).
>
> (4)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work with no mental restrictions; no more than frequent fingering; occasional pushing/pulling; lifting ten pounds occasionally and five pounds frequently; no stooping, balancing, crawling, kneeling or climbing; and sitting six hours and standing two hours in a normal workday with normal breaks.
>
> (5)    The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> (6)    The claimant was born on June 7, 1969 and was 37 years old, which is defined as a younger individual 18-44, on the date the application was filed (20 CFR 416.963).
>
> (7)    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> (8)    Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> (9)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> (10)    The claimant has not been under a disability, as defined in the Social Security Act, since October 30, 2006, the date the application was filed (20 CFR 416.920(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie

showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to include in the hypothetical to the vocational expert vision-related limitations and (2) failing to inquire about a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. The Court will consider each alleged error in turn.

**I.      Hypothetical Question to the Vocational Expert**

The plaintiff first contends that the ALJ failed to pose a complete hypothetical question to the vocational expert ("VE")because it did not include the plaintiff's vision impairment in functional terms. (Pl. Brief at 15-19.) The best corrected vision for the plaintiff's right is was 20/800 and the best for his left eye is 20/40. (R. at 145-46.) The plaintiff admits (Pl. Brief at 15-16), however, that the ALJ posed the following question to the VE: "[w]ould a person with one eye correctable to 20/40 be able to perform the [jobs identified by the vocational expert]." (R. at 35.) In response, the vocational expert testified that such a person could perform the identified jobs, which included sorter, assembler, inspector, and surveillance monitor. *Id.* The ALJ then again asked if such a person could perform the jobs "[e]ven if he had only one eye correctable to 20/40." (R. at 36.) The vocational expert again answered in the affirmative. *Id.*

Even still, the plaintiff contends that the ALJ's hypothetical was incomplete insofar as he failed to convert the plaintiff's deficient acuity into actual and functional terms. In other words, the plaintiff believes he should have translated the diagnostic phrase "one eye correctable to 20/40" into some specific limitation. The plaintiff recommends, without record citation, "Obviously, any individual with no useful vision in one eye does not have binocular vision or depth perception. However, other visual restrictions would be supported by the medical evidence. A restricted visual field and limited or poor fine acuity are two additional strong possibilities." (Pl. Brief at 17.) But, in fact, it is not obvious – or not obvious in a legally cognizable way. As far as the Court can tell, it is undisputed, that no medical source

5

opinions have identified any functional limitation as a result of the vision impairment. The plaintiff has certainly not directed the Court's attention to any.

In contrast, the defendant and the ALJ have emphasized that the plaintiff was able to work for years with essentially no vision in his right eye, a lifelong impairment. (R. at 14, 21, 32.) The plaintiff was able to perform the requirements of his past relevant work as a landscaper, heating and air conditioning mechanic, pump and engine repairman, and painter (R. at 32), and even drive an automobile (R. at 22), despite his vision impairment. So, the ALJ could not have erred in failing to include any eye-related limitation, which the record does not support.

Of course, the plaintiff complains that this invites a different sort of error. Namely, the ALJ has included an impairment, of unknown effect, necessarily requiring the VE to guess at possible limitations. Even if this is somehow true, it is harmless. The record supports no vision related limitations and, therefore, whatever limitations the VE might have assumed, which did not change his testimony, were, therefore, functionally equivalent to assuming no limitation at all. And, in fact, the opposite is true. The government would have a justified objection had the VE altered his recommendation based on some private and assumed functional limitation otherwise not supported by the record.

The plaintiff further but unpersuasively argues that the question was ambiguous because the ALJ did not specify that the plaintiff had vision in *only* one eye. (Pl. Brief at 17.) As the defendant contends, however, this is not a credible claim. It is uncontested that the vocational expert listened to all of the testimony given at the plaintiff's administrative hearing, and could not, therefore, have been unaware of the plaintiff's condition. (R. at 18.) Moreover, the ALJ expressly asked the hypothetical twice, emphasizing, on the second occasion, that the hypothetical person had "only one eye." (Compare R. at 35 with R. at 36.)

The Court can find no meaningful error in regards to the hypothetical questioning. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where

6

the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). Frankly, the Court feels unsatisfied in concluding as much. And, ironically, it has had two such cases in a matter of weeks. It seems intuitive that having only one eye, and, in that one, vision only to 20/40, would result in serious limitation. But, the ALJ and the Court cannot just presume it; there must be evidence – and considering the nature of the impairment, it was not insubstantial to demand medical evidence. (See R. at 13-14); SSR 96–8p, 1996 WL 374184, at *7   (The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, **citing specific medical facts (e.g., laboratory findings)**" (emphasis added).)

## II.     Vocational Expert Testimony

The plaintiff also argues that the ALJ erred because the vocational expert's testimony was not consistent with the Dictionary of Occupational Titles ("DOT"), and the ALJ failed to elicit a reasonable explanation for the inconsistencies. (Pl. Brief at 20-24.) Specifically, the plaintiff argues that the jobs identified by the vocational expert required depth perception or near acuity of vision which was precluded by his vision impairment. The VE indicated that the plaintiff could perform the jobs of sorter (DOT # 521.687-086), assembler (DOT # 739.684-094), inspector (DOT # 726.684-050), and surveillance monitor (DOT # 379.367-010). (R. at 34.) Apparently, these jobs require at least frequent good near acuity of vision. (See Pl. Attach. A.) The plaintiff contends that the ALJ should have, therefore, resolved the conflict between the demands of these jobs and the plaintiff's vision-related limitations.

SSR 00-4p requires that "[w]hen there is an *apparent unresolved* conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict . . . ." SSR 00-4p (emphasis added). The plaintiff, however, has not identified any "apparent unresolved conflict" about which the ALJ should have inquired.

Specifically, there is no objective evidence that the plaintiff's depth perception and near acuity were impaired in the way he claims. So there can be no apparent conflict with the demands of the jobs identified as described in the DOT. The Court does not mean to oversimplify the consideration. It is serious to the plaintiff. But, the plaintiff cannot, over and over, baldly claim limitations that medical expertise has not corroborated. Respectfully, such limitations do not seem difficult to establish, if present. The Court neither means to be naive or insulting. But, the plaintiff has not explained how the conflict was manifest such that the ALJ had obligation, under SSR 00-4p, to inquire about it. There was no error.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe Hendricks
                                                BRUCE H. HENDRICKS
                                                UNITED STATES MAGISTRATE JUDGE

July 22, 2011
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).